**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

PANTAURUS LLC,

              Plaintiff,

     v.

FACEBOOK, INC.,

              Defendant.

Civil Action No.:  1:14-cv-00444-RC

JURY TRIAL DEMANDED

**DEFENDANT FACEBOOK'S MOTION TO TRANSFER TO THE NORTHERN**
**DISTRICT OF CALIFORNIA DUE TO IMPROPER VENUE UNDER 28 U.S.C. § 1406**
**AND, IN THE ALTERNATIVE, UNDER 28 U.S.C. § 1404**

# Table of Contents

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.   PanTaurus, a non-practicing entity, alleges infringement by Facebook's back-end data management system. ...................................................... 2

    B.   The majority of documents and potential witnesses are located in the Northern District of California, and none are located in the Eastern District of Texas. ........................................................................................ 2

III.  LEGAL PRINCIPLES ......................................................................................... 3

    A.   Venue is improper when the Court cannot exercise personal jurisdiction over the defendant. ........................................................................... 3

    B.   Venue may be transferred for the convenience of parties and witnesses. ............. 5

IV.   ARGUMENT ....................................................................................................... 5

    A.   This case should be transferred because there is no personal jurisdiction over Facebook and, therefore, venue is improper. ........................................ 5

        1.   Facebook is not subject to general jurisdiction in the Eastern District of Texas because Facebook is not "at home" in this district. ............................................................................................... 6

        2.   PanTaurus's alleged injury has nothing to do with the Eastern District of Texas, making specific jurisdiction over Facebook unavailable. ........................................................................................... 8

    B.   Should the Court not transfer this case for improper venue, this case should be transferred in the interest of justice and for the convenience of the parties and witnesses. ..................................................................... 9

        1.   This case could have been brought in Northern California. ..................... 9

        2.   Transfer is warranted because the witnesses and evidence are primarily located in Northern California. ................................................. 10

            a.   The private interest factors favor transfer. ................................... 10

                (1)   The comparative ease of access to proof favors transfer. .......................................................................... 11

                (2)   The concentration of non-party witnesses and availability of compulsory process favors transfer. ......... 11

                (3)   The cost of witness attendance favors transfer. ............... 12

                (4)   No delay or prejudice is caused by transfer. ..................... 13

            b.   The public interest factors favor transfer. ................................... 13

# Table of Contents
(continued)

**Page**

(1)     Court congestion in this district favors transfer. .............. 14

(2)     Northern California has greater interest in this case. ....... 14

(3)     The remaining public interest factors are neutral. ........... 14

3.    Judicial economy favors transfer to Northern California. ...................... 15

V.    CONCLUSION .......................................................................................................... 15

# Table of Authorities

**Page(s)**

**Cases**

*Acceleron, LLC v. Egenera, Inc.*,
    634 F. Supp. 2d 758 (E.D. Tex. 2009) ...............................................................................4, 13

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) .........................................................................................13

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*,
    968 F. Supp.2d 852 (E.D. Tex. 2013) (Clark, J.) .................................................................14

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
    480 U.S. 102 (1987) ............................................................................................................9

*Avocent Huntsville Corp. v. Aten Int'l Co. Ltd.*,
    552 F.3d 1324 (Fed. Cir. 2008) ...........................................................................................4

*CSR Tech., Inc. v. Bandspeed, Inc.*,
    No. CV-11-1948-PHX-GMS, 2012 WL 1150863 (D. Ariz. Apr. 5, 2012) .............................3

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ...............................................................................................1, 4, 6, 7

*Evolutionary Intelligence, LLC v. Facebook, Inc.*,
    No. 6:12-cv-00784, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013) ......................................15

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .....................................................................................11, 12

*In re Horseshoe Entm't*,
    337 F.3d 429 (5th Cir. 2003) .............................................................................................13

*Innovative Global Sys. LLC v. OnStar, LLC*,
    No. 6:10-CV-574, 2012 U.S. Dist. LEXIS 114504 (E.D. Tex. Feb. 14, 2012) ......................15

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................................8

*Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
    No. 9:07-CV-46, 2008 U.S. Dist. LEXIS 124940 (E.D. Tex. Jan. 31, 2008)
    (Clark, J.) ........................................................................................................................4, 7

*Klausner Techs., Inc., v. Interactive Intelligence Grp., Inc.*,
    No. 6:11-cv-00578-LED (E.D. Tex. Sept. 26, 2012) (Davis, J.) ............................................15

## Table of Authorities
(continued)

**Page(s)**

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   No. 2:13-CV-655, 2014 WL 4354130 (E.D. Tex. Sept. 2, 2014) (Bryson, J.,
   Federal Circuit Judge, sitting by designation) ..........................................................................7

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ............................................................................................6, 7

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994)...............................................................................................8

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009).......................................................................................5, 10

*Radio Sys. Corp. v. Accession, Inc.*,
   638 F.3d 785 (Fed. Cir. 2011)............................................................................................4, 8

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998).............................................................................................4

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005).............................................................................................3

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)......................................................................10, 12, 14, 15

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)...............................................................................................................5

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .................................................................................................9

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ....................................................................................5, 11, 13

*Watts v. L-3 Commc'ns Corp.*,
   No. 2:12-CV-28-JRG, 2012 WL 4480721 (E.D. Tex. Sept. 26, 2012) ...................................4

*Web.com, Inc. v. The Go Daddy Group, Inc.*,
   No. 1:06-cv-1461-TCB, 2007 U.S. Dist. LEXIS 99061 (N.D. Ga. Aug. 03,
   2007) ......................................................................................................................................8

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)............................................................................................15

**Table of Authorities**
(continued)

**Page(s)**

**Statutes**

28 U.S.C.

§ 1391(c) ...............................................................................................................................10
§ 1391(c)(2) .............................................................................................................................3
§ 1391(d) ..................................................................................................................................3
§ 1400(b) ..................................................................................................................................3
§ 1404 ...................................................................................................................................1, 9
§ 1404(a) .....................................................................................................................1, 5, 9, 12
§ 1406 ........................................................................................................................................1
§ 1406(a) ................................................................................................................................1, 5

**Other Authorities**

Fourteenth Amendment ...........................................................................................................4

F. R. Civ. P.45(c)(1)...............................................................................................................12

Defendant Facebook, Inc. ("Facebook") respectfully moves the Court to transfer this action to the Northern District of California ("Northern California") due to improper venue under 28 U.S.C. § 1406(a) and, in the alternative, under 28 U.S.C. § 1404(a).

## I.   INTRODUCTION

Plaintiff PanTaurus LLC ("PanTaurus"), a newly formed patent-assertion entity, accuses California-based Facebook of infringing U.S. Patent No. 6,272,533 (the "'533 patent") based on Facebook's use of a *back-end* data management system—"Hadoop"—that is neither present in the Eastern District of Texas nor used by residents in this district.  Allowing this action to proceed in this judicial district would violate due process as neither general nor specific personal jurisdiction lie over Facebook in this district.

Facebook is not subject to general jurisdiction in the Eastern District of Texas.  Facebook is a Delaware corporation with its principal place of business in the Northern District of California.  Facebook has no offices in the Eastern District of Texas.  None of Facebook's employees work or live in this district.  Under the Supreme Court's *Daimler* decision, there are no affiliations "so continuous and systematic" as to render Facebook "essentially at home" in this district.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014).

Specific jurisdiction over Facebook in the Eastern District of Texas also does not exist in this case.  Here, PanTaurus accuses Facebook's *back-end* data management system of infringing its patent.  This system is not sold or marketed to residents of the Eastern District of Texas.  In short, PanTaurus's infringement claim does not arise out of, or relate to, any Facebook activities in the Eastern District of Texas.

Because this judicial district lacks general and specific personal jurisdiction over Facebook in this case, venue is improper and Facebook respectfully requests that the Court transfer this action to Northern California under § 1406.  In the alternative, Facebook respectfully requests that the Court transfer this action to Northern California pursuant to § 1404 because the balance of private and public interest factors weigh heavily in favor of transfer.

## II.    FACTUAL BACKGROUND

### A.    PanTaurus, a non-practicing entity, alleges infringement by Facebook's back-end data management system.

PanTaurus is a non-practicing entity with no apparent business in the Eastern District of Texas other than asserting its patent in litigation.  PanTaurus was formed as a Texas LLC in June 2013 and acquired the '533 patent in July 2013.  (Declaration of Reuben Chen in Support of Facebook's Motion to Transfer Venue to The United States District Court for The Northern District of California   ("Chen Decl."), Exs. A-D.)[1]  PanTaurus's Complaint against Facebook alleges a single count of direct infringement.  (Complaint, ECF No. 1 ("Compl."), at ¶¶ 13-16.) The allegation accuses Facebook of infringing "by making, having made, and/or using secure computer systems covered by one or more claims of the '533 patent, including without limitation digital computer systems comprising one or more Hadoop-compatible file systems (the 'Accused Instrumentalities')."  (Compl. at ¶ 13.)  "A Hadoop distributed file system, often referred to by the acronym 'HDFS,' is a distributed file system that includes computer hardware (e.g., servers and memory) and computer software for performing program functions."  (*Id.*)  To date, no discovery has occurred is this case and the initial case management conference is set for March 24, 2015.

### B.    The majority of documents and potential witnesses are located in the Northern District of California, and none are located in the Eastern District of Texas.

Facebook is a Delaware corporation with a principal place of business in Menlo Park, California.  (Declaration of Jeremy Jordan in Support of Facebook's Motion to Transfer ("Jordan Decl."), ¶ 2.)  Facebook was established in Palo Alto, CA in June 2004.  (*Id.*)  Indeed, except for

---

[1]On September 3, 2013, less than two months after acquiring the '533 patent, PanTaurus filed fifteen actions in this district alleging infringement of the '533 patent.  *See* Case Nos. 1:13-cv-00538-52.  All of these were settled and/or dismissed early in the case.  *See id.*  PanTaurus filed a second wave of sixteen cases on April 23, 2014.  *See* Case Nos. 1:14-cv-00226-41.  All of these were also settled and/or dismissed early in the case.  PanTaurus filed a third wave of twelve cases, including this case against Facebook, on September 2, 2014, *see* Case Nos. 1:14-cv-00439-50, and a fourth wave of thirteen cases on October 10, 2014.  *See* Case Nos. 1:14-cv-00511-23.  All remaining cases are in their early stages.

the first few months of its beginnings, the majority of Facebook's existence and operations have occurred at its headquarters in Northern California.  (*Id*.)

Consequently, the majority of Facebook's sources of proof are located or ultimately managed from Northern California.  (*Id*., ¶ 3.)  In particular, the majority of employees with knowledge on the design, development, and operation of HDFS are located in Northern California.  (*Id*., ¶ 5.)  Additional employees with knowledge of HDFS are located in Facebook's Seattle, Washington office.  (*Id*.)  None of these individuals are located in the Eastern District of Texas.  Indeed, Facebook has no offices in the Eastern District of Texas, nor does Facebook have any employees that work or reside in the Eastern District of Texas.  (*Id*., ¶¶ 8-9.)  Additionally, the documentation regarding HDFS developed by these employees, and HDFS itself, are located at Facebook's data centers, none of which are located in the Eastern District of Texas.  (*Id*., ¶ 6.)

## III.   LEGAL PRINCIPLES

### A.    Venue is improper when the Court cannot exercise personal jurisdiction over the defendant.

For patent infringement cases, a plaintiff may bring suit in a venue where a defendant "resides." 28 U.S.C. § 1400(b).[2]  For purposes of venue, a corporate defendant "resides" in "any judicial district in which such defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(c)(2).  And where there are multiple judicial districts in a state, a corporation resides "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."  28 U.S.C. § 1391(d).  Therefore, in deciding whether venue is improper in this case, the personal jurisdiction analysis requires

---

[2]The Federal Circuit has essentially held that analysis of the second venue test under § 1400(b)— "where the defendant has committed acts of infringement *and* has a regular and established place of business"—is unnecessary.  *See CSR Tech., Inc. v. Bandspeed, Inc.*, No. CV-11-1948-PHX-GMS, 2012 WL 1150863, at *2 (D. Ariz. Apr. 5, 2012) ("Despite the statute's requirement that a defendant have a regular and established place of business, the Federal Circuit has held that when a defendant is a corporation, personal jurisdiction alone is adequate to support venue.") (*citing Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005)).

examining Facebook's contacts in the Eastern District of Texas.[3]   Additionally, Plaintiff PanTaurus bears the burden of proof to establish that personal jurisdiction exists.  *See Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009) ("Once a movant challenges a court's jurisdiction over him, the party asserting jurisdiction bears the burden to show the movant has minimum contacts with the forum state to support jurisdiction over the movant.").

        "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries:  whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process."  *Avocent Huntsville Corp. v. Aten Int'l Co. Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).  "Because Texas' long arm statute has been interpreted to extend to the limits of due process, the only question is whether Defendant's contacts with the State are sufficient to satisfy the due process clause of the Fourteenth Amendment."  *Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 9:07-CV-46, 2008 U.S. Dist. LEXIS 124940, at *4-5 (E.D. Tex. Jan. 31, 2008) (Clark, J.).  Due process requires that there be either general or specific jurisdiction over the defendant such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Daimler*, 134 S. Ct. at 754.  Under *Daimler*, a defendant is subject to general jurisdiction only if the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum."  *Id*. at 761.  To decide whether there is specific jurisdiction, a "three-prong test" is used to determine whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair.  *Radio Sys. Corp. v. Accession, Inc.*,  638 F.3d 785, 789 (Fed. Cir. 2011).[4]

---

[3]*See Watts v. L-3 Commc'ns Corp.*, No. 2:12-CV-28-JRG, 2012 WL 4480721, at *2 (E.D. Tex. Sept. 26, 2012) ("Because Texas is a state with multiple federal judicial districts, in order to determine whether [defendant] "resides" in the Eastern District, the Court must first analyze whether [defendant] would be subject to personal jurisdiction in the Eastern District if it were a separate state.").

[4]Federal Circuit law controls on the question of personal jurisdiction in patent infringement cases.  *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir.

If venue is improper for lack of personal jurisdiction, a district court "*shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a) (emphasis added).

**B.     Venue may be transferred for the convenience of parties and witnesses.**

A district court may also transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  As the Supreme Court has explained, transfer is appropriate under Section 1404(a) to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The party seeking transfer of venue must show that the transferee district is "clearly more convenient."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

The Court must analyze various private and public factors relating to the convenience of the parties and witnesses as well as the interests of particular venues in hearing the case.  *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The private factors are as follows: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive.  *Id*.  The public factors are as follows: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law.  *Id.*

**IV.    ARGUMENT**

**A.     This case should be transferred because there is no personal jurisdiction over Facebook and, therefore, venue is improper.**

Venue is improper in this district and this case should be transferred to the Northern

---

1998) ("This court applies the law of the Federal Circuit, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case.").

District of California because this Court can exercise neither general nor specific jurisdiction over Facebook in this case.   As demonstrated below, Facebook's contacts with the Eastern District of Texas are not sufficient to confer general jurisdiction because Facebook is not "at home" in the Eastern District of Texas.   Moreover, because the allegedly infringing acts PanTaurus accuses did not, and could not, occur in the Eastern District of Texas, specific jurisdiction over Facebook in the Eastern District of Texas also does not exist.   Thus, despite PanTaurus's bald allegation that "[t]his Court has personal jurisdiction over Defendant," (Compl. ¶ 4) the facts demonstrate otherwise.

> **1.     Facebook is not subject to general jurisdiction in the Eastern District of Texas because Facebook is not "at home" in this district.**

As explained above, the Supreme Court recently held that the existence of general jurisdiction turns on whether a corporation's affiliations with the forum are "so continuous and systematic as to render [the defendant] essentially at home in the forum." *Daimler*, 134 S. Ct. at 761.   The "paradigm" bases of general jurisdiction for a corporation are the corporation's "place of incorporation and principal place of business." *Id.* at 760.   Outside these locales, it would take "an exceptional case" for a corporation to have an activity level approaching the paradigm "at home" status. *Id.* at 761 n.19; *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

Facebook is not "at home" in the Eastern District Texas.   Facebook is a Delaware corporation with its principal place of business in Menlo Park, California.   (Jordan Decl., ¶¶ 2-3.) Facebook has no offices or data centers in the Eastern District of Texas, nor does it have any employees who live or work in this district.   (*Id.*, ¶¶ 6, 8-9.)   Further, Facebook does not maintain any business records or documents in the Eastern District of Texas.   (*Id.*, ¶ 10.) Accordingly, PanTaurus cannot establish that Facebook is subject to general jurisdiction in the Eastern District of Texas.

Though Facebook operates a website at www.facebook.com, which is accessible by residents in the Eastern District of Texas, such contact does not render Facebook "at home" in this district.  *See Daimler*, 134 S. Ct. at 761.  Indeed, the Fifth Circuit has held that a defendant's "interactive website" does not constitute the required continuous and systematic contact to render the defendant at home in Texas because, "at most, [the defendant's] website shows that [the defendant] conducts business *with* Texas, not *in* Texas."  *Monkton*, 768 F.3d at 432 (emphasis added).  This Court has further recognized that "[t]he maintenance of a website is a continuous presence everywhere in the world, but even repeated business contacts through a website are not in any way substantial."  *Iovate*, 2008 U.S. Dist. LEXIS 124940, at *8 (Clark, J.).

Additionally, Facebook's contacts with this district through its website must be viewed in the context of Facebook's activities nationwide and worldwide.   As the Supreme Court explained:

> [T]he general jurisdiction inquiry does not focu[s] solely on the magnitude of the defendant's in-state contacts…   General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.   A corporation that operates in many places can scarcely be deemed at home in all of them.

*Daimler*, 134 S. Ct. at 762 n.20.   In the context of Facebook's nationwide and worldwide activities, mere website access cannot render Facebook "at home" in Texas.  Facebook's website is accessible nearly everywhere in the world.   Further, whereas there are Facebook offices and employees in other forums, such as Northern California, there are no offices and no employees in the Eastern District of Texas.  (Jordan Decl., ¶¶ 8-9.)  Given its limited contacts with the Eastern District of Texas, Facebook is simply not "at home" in this district and, therefore, cannot be subject to general jurisdiction here.  *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4354130, at *5-7 (E.D. Tex. Sept. 2, 2014) (Bryson, J., Federal Circuit Judge, sitting by designation) (finding no general jurisdiction where the defendant had no office in the Eastern District of Texas and no employees in the district).

**2.   PanTaurus's alleged injury has nothing to do with the Eastern District of Texas, making specific jurisdiction over Facebook unavailable.**

Specific personal jurisdiction exists only in disputes that "arise out of or are connected with the activities within the state." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945).  As explained above, specific jurisdiction requires that (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair.  *Radio Sys.*, 638 F.3d at 789.  None of these elements are satisfied here.

PanTaurus complains of only one injury: direct infringement by Facebook of the '533 patent "by making, having made, and or using secure computer systems . . . including … digital computer systems comprising one or more Hadoop-compatible file systems . . . ."  (Compl. at ¶ 13.)  The locus of the alleged "making" and "using" are "purely physical occurrences [that] are relatively straightforward to place"—the place is where the articles are made or used. *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994); *see also Web.com, Inc. v. The Go Daddy Group, Inc.,* No. 1:06-cv-1461-TCB, 2007 U.S. Dist. LEXIS 99061, at *12-14 (N.D. Ga. Aug. 03, 2007) (transferring case to Arizona, reasoning that "to the extent that Web.com's patent claims are infringed, they are infringed by Go Daddy in Arizona where Go Daddy's servers and equipment are maintained").  Facebook's HDFS are entirely back-end systems, located at Facebook's data centers, none of which are in Texas.  Consequently, the accused systems were neither "made" nor "used" in this judicial district and PanTaurus's alleged injury does not "arise out of" any activities that Facebook directed toward residents of this district.  Accordingly, there is no specific jurisdiction.

Further, even if PanTaurus could establish that its infringement claim arises out of Facebook's activities in this district (and PanTaurus cannot), the exercise of specific jurisdiction would be unreasonable here.  The Supreme Court has stated that the following factors should be considered when determining whether the exercise of jurisdiction would violate "traditional notions of fair play and substantial justice": (1) the burden on the defendant, (2) the interests of

-8-

the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).

Here, the exercise of personal jurisdiction in this district would result in a heavy burden on Facebook.  As further detailed below in Section B (regarding Facebook's alternative request for transfer under §1404), the primary location of the evidence and potential party witnesses in this case is in Northern California.  (Jordan Decl., ¶¶ 3, 5, and 7.)  As such, local interests favor adjudication of this case in Northern California.  By contrast, there is little local interest in having this case tried in the Eastern District of Texas, especially given that PanTaurus's infringement claim does not arise out of Facebook's activities in this district.  Any local interest the Eastern District of Texas may have in this case is undermined by PanTaurus's status as a recently formed, non-practicing entity, whose only known asset is a patent issued to an inventor living in Virginia.  (Chen Decl., Exs. C, P.)  PanTaurus can obtain whatever relief, if any, it deserves in the Northern District of California.  Additionally, because of the proximity of likely witnesses, both party and non-party, to the Northern District of California, and given the most recent Judicial Caseload statistics showing that the Northern District of California's docket is less congested than the Eastern District of Texas's docket and has a quicker median time to resolve a case, the most efficient resolution can be achieved in Northern California.  (*Id.*, Ex. E.) Given the above facts, the exercise of personal jurisdiction in this district would not comport with "fair play and substantial justice."

> **B.**     **Should the Court not transfer this case for improper venue, this case should be transferred in the interest of justice and for the convenience of the parties and witnesses.**

> **1.**     **This case could have been brought in Northern California.**

The threshold question for a § 1404(a) convenience transfer is whether the suit could have been brought in the proposed transferee district.  *In re Volkswagen AG*, 371 F.3d 201, 203

(5th Cir. 2004) ("*Volkswagen I*").  Here, there is no dispute PanTaurus could have brought this case in the Northern District of California.  *See* 28 U.S.C. § 1391(c).

> ### 2.      Transfer is warranted because the witnesses and evidence are primarily located in Northern California.

The proposed transferee forum is "clearly more convenient" when, as here, the evidence is primarily concentrated around one district—the Northern District of California.  *See, e.g.*, *In re Nintendo*, 589 F.3d at 1198 (where "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff", transfer should be granted).  Although PanTaurus has manufactured the façade of a Beaumont presence, it appears that PanTaurus has done so only to litigate in this district.

> #### a.      The private interest factors favor transfer.

The four private interest factors are:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).[5] Here, all of the private interest factors favor transfer.

The evidence is more easily accessible from Northern California, because Facebook's potential witnesses are primarily located in or nearer to Northern California, and relevant non-party witnesses, including prior art witnesses and the co-creator of Hadoop reside in Northern California.  In contrast, Facebook is aware of no significant relevant non-party witnesses that can be compelled to give trial testimony in this district.  Given that California is the location of the majority of known, likely party and non-party witnesses, Northern California is by far more convenient.  Similarly, the majority of documentary evidence relevant to this case is maintained or more readily accessible in Northern California.

---

[5]"[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer."  *In re Nintendo*, 589 F.3d at 1200.

### (1)    The comparative ease of access to proof favors transfer.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Here, the physical location of the majority of the evidence is in Northern California. Facebook is headquartered in Northern California.  Facebook's facilities, records, and employees are primarily located in Northern California.  (Jordon Decl., ¶¶ 3, 5, and 7.)  Nearly all of the information related to Facebook's general operations, marketing, financials, and customer service are accessible and ultimately managed from Menlo Park.  (*Id.*, ¶ 3.)  Further, the majority of Facebook employees knowledgeable about the design, development, and operation of HDFS are located at Facebook's Menlo Park headquarters.  (*Id.*, ¶ 5.)  Individuals who may have knowledge about HDFS as related to Plaintiff's allegations include include Sameet Agarwal, Peter Knowles, Eddie Ma, and Tom Nykiel.  (*Id.*)  Additional employees who may have knowledge about the design, development, and operation of HDFS, such as Ganapathy Krishnamoorthy, are located at Facebook's Seattle office.  (*Id.*)  For these employees in Seattle, the Northern District of California is much closer and therefore more easily accessible in terms of time and cost.  *See Volkswagen II*, 545 F.3d at 317.  Thus, this factor favors transfer.

### (2)    The concentration of non-party witnesses and availability of compulsory process favors transfer.

The primary consideration under the second factor is the location of non-party witnesses. Here, significant non-party witnesses reside or regularly transact business in Northern California and are located more than 100 miles from Beaumont, Texas.

Several highly relevant prior art sources are located in Northern California.  For example, Sun Microsystems, Inc.'s Network File System ("NFS"), which was developed in 1984, is prior art to the '533 patent.  Sun Microsystems began implementation of the NFS by at least March of 1984 in Mountain View, California.  Facebook expects that discovery will facilitate the identification of Sun Microsystems/Oracle employees with unique knowledge of NFS.  Sun was

located in Mountain View, California, and Oracle, who acquired Sun, is headquartered in Redwood Shores, California. (Chen Decl., Exs. F-H.) Additionally, NetApp, Inc.'s U.S. Patent No. 6,457,130 ("'130 patent") is prior to the '533 patent. (*Id*., Ex. I.) NetApp is located in Sunnyvale, California. (*Id*., Ex. J.) Further, Mathew Shafe, named inventor of U.S. Patent No. 6,035,429, which was utilized in Unified Patents Inc.'s petition for *inter partes* review of the '533 patent,[6] appears to reside in Northern California. (*Id*., Exs. K-N.) Finally, Douglass R. Cutting, the co-creator of Hadoop resides in Northern California. Mr. Cutting has knowledge on the development of Hadoop, and likely prior art. (*Id*., Ex. O.)

By contrast, there appear to be no relevant witnesses located in the Eastern District of Texas. The named inventor of the '533 patent, Hendrik Browne, appears to reside in the "Washington D.C. Metro Area." (*Id*., Ex. P.)

Given the concentration of non-party witnesses in Northern California, it is certainly more convenient for such witnesses to be deposed in California and appear in a Northern California trial. (*Id*., Exs. N-P.) Moreover, under Federal Rule of Civil Procedure 45(c)(1) a court may compel non-party witnesses to testify at trial only when located within 100 miles of the courthouse or within the state where the person resides, is employed, or regularly transacts business in person. FED. R. CIV. P. 45(c)(1). Thus, this factor also weighs in favor of transfer.

### (3)   The cost of witness attendance favors transfer.

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d at 1343 (citation omitted). "[T]he Fifth Circuit established [ ] a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'"*In re TS Tech*, 551 F.3d at 1320.

The majority of the party witnesses with technical knowledge of Facebook's HDFS

---

[6]Unified Patents Inc. and PanTaurus jointly moved to terminate the IPR as a result of settlement. (Chen Decl., Ex. L.)

reside in Northern California.  (Jordan Decl., ¶ 5).  As the crow flies[7], it is nearly 1,700 miles from Menlo Park to Beaumont.  (Chen Decl., Ex. Q.)  For potential witnesses located in Seattle, having to travel to Northern California, where Facebook is headquartered, is far more convenient because Seattle is much closer to Northern California than to Beaumont.  As the crow flies, Seattle is 1,900 miles from Beaumont, but only 700 miles from San Jose, the location of the furthest Northern District of California courthouse from Seattle.  (*Id.*, Exs. R-S.)  This 1,200 mile difference greatly increases the inconvenience to these witnesses.  *See Volkswagen II*, 545 F3d at 317.)  Accordingly, Northern California is more convenient for all likely party witnesses. Further, as set forth above, there are multiple highly relevant non-party witnesses located in Northern California, and none in this district.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) ("the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff's chosen forum is an important consideration").  Because Northern California is more convenient for the vast majority of the known likely party and non-party witnesses, this factor weighs heavily in favor of transfer.

### (4)      No delay or prejudice is caused by transfer.

Application of the fourth factor is only relevant in "rare and special circumstances" and therefore this factor is most often neutral.  *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).  No such rare or special circumstances are presented here.  The case is in its early stages with an initial case management conference set for March 24, 2015, and no other risks of delay or prejudice are likely.  Therefore, this factor is neutral.

### b.      The public interest factors favor transfer.

In addition to the private factors, the Court must also consider the following public interest factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the

---

[7]*Am. Traffic Sols., Inc. v. B&W Sensors, LLC*, 1:12-cv-00504-RC, n.3 (E.D. Tex. Jan. 14, 2013) (Clark, J.) ("Fifth Circuit precedent indicates that for purposes of computing distance, the proper measure is the straight line, 'as the crow flies' mode of calculation.").

-13-

law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law.  *In re TS Tech*, 551 F.3d at 1319.  As applied here, the balance of the public interest factors favors transfer.

### (1)    Court congestion in this district favors transfer.

The most recent Judicial Caseload statistics indicate that the Northern District of California's docket is less congested than the Eastern District of Texas's docket.  For example, as of September 30, 2014, the Northern District of California has 455 pending cases per judge, whereas the Eastern District of Texas has 696 pending cases per judge.  (Chen Decl., Ex. E.) Also, the median time to resolve a civil case in the Northern District of California is less than in the Eastern District of Texas (7.9 months vs. 8.4 months, respectively).  (*Id.*)  Thus, this factor favors transfer.

### (2)    Northern California has greater interest in this case.

Local interests favor adjudication of this case in Northern California, as Facebook's headquarters and witnesses are in Northern California, and the allegedly infringing product was researched and developed in Northern California.  *See Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.,* 968 F. Supp.2d 852, 855 (E.D. Tex. 2013) (Clark, J.) ("The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley.")  Further, many of the defendants PanTaurus has sued are California companies and several have moved or intend to move to transfer to Northern California.  California courts thereby have an interest in resolving these disputes.

By contrast, the connection between this case and the Eastern District of Texas is weak, as PanTaurus is a non-practicing entity, whose only known asset is a patent issued to an inventor living in Virginia.  (*Id.*, Exs. B-D, and P.)  Accordingly, this factor weighs in favor of transfer.

### (3)    The remaining public interest factors are neutral.

The remaining public interest factors are neutral.  Both courts are familiar with the substance and application of the federal patent law governing this case, and there are no conflicts

of law to avoid.  *See In re TS Tech*, 551 F.3d at 1320.

3.     Judicial economy favors transfer to Northern California.

Transferring this case will not create significant judicial inefficiencies given that several of the defendants have already sought or intend to seek transfer to Northern California. Moreover, the fact that other cases may remain in this district does not preclude a transfer of this case. *See In re Zimmer Holdings, Inc.,* 609 F.3d 1378, 1382 (Fed. Cir. 2010) (holding that the existence of another suit in the forum does not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor" transfer); *accord Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 6:12-cv-00784, 2013 WL 8360309, at *8 (E.D. Tex. Aug. 27, 2013); *Klausner Techs., Inc., v. Interactive Intelligence Grp., Inc.*, No. 6:11-cv-00578-LED (E.D. Tex. Sept. 26, 2012) (Davis, J.); *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-CV-574, 2012 U.S. Dist. LEXIS 114504, at *20 (E.D. Tex. Feb. 14, 2012).

**V.     CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that the Court transfer this case to the United States District Court for the Northern District of California.

Dated: February 24, 2015

OF COUNSEL

Heidi L. Keefe (CA Bar 178960)
Mark R. Weinstein  (CA Bar 193043)
Reuben H. Chen (CA Bar 228725)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 857-0663
Email: hkeefe@cooley.com
Email: mweinstein@cooley.com
Email: rchen@cooley.com

Respectfully Submitted,

By: /s/ *Reuben H. Chen*

Deron R. Dacus
Texas Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

**ATTORNEYS FOR
DEFENDANT FACEBOOK, INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that I, Reuben H. Chen, counsel for Defendant Facebook, Inc., met and conferred by telephone with Craig Tadlock, counsel for Plaintiff PanTaurus, on the 10th of February, 2015 in compliance with LR cv-7(h).   Counsel for Plaintiff has indicated that the Motion is opposed.

*/s/ Reuben H. Chen*
Reuben H. Chen

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule cv-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule cv-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule cv-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and  correct copy of this document via email, facsimile and/or U. S. First Class Mail this 24th day of February, 2015.

*/s/ Reuben H. Chen*
Reuben H. Chen